```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
GARDEN CITY BOXING CLUB, INC.,
                                              04 Civ. 5027(DFE)
            Plaintiff,
                                              This is an ECF case
       -against-
                                              OPINION AND ORDER
MARCO SALCEDO and TRIO BAR CORP.,
d/b/a CAFE MELAO,

            Defendants.
----------------------------------------X
```

DOUGLAS F. EATON, United States Magistrate Judge.

   Plaintiff Garden City Boxing Club, Inc. ("Garden City") brought this action under 47 U.S.C. § 605 and § 553, alleging that the defendants illegally intercepted and exhibited plaintiff's November 8, 2003 closed circuit exhibition of the Tarver/Jones boxing match and its related bouts.

   On January 31, 2005, the parties participated in a mediation and reached a settlement that required defendants to make two payments of $1,500 each to plaintiff. On April 20, 2005, Judge Berman granted defense counsel, Jason Pascal, permission to withdraw as counsel due to his inability to contact his clients.

   In a Memorandum and Order dated July 21, 2005, I granted a default judgment against Marcos Salcedo and Trio Bar Corp. d/b/a Café Melao. My Order directed: (1) the defendants to send me any opposing papers to plaintiff's motion in support of damages by September 30, 2005; and (2) the parties to notify me by September 30 if they wanted me to hold a hearing on October 28, 2005. To date, defendants have not served any opposition papers, and neither party has requested an inquest hearing.

## BACKGROUND

   Garden City owns the commercial rights to distribute the November 8, 2003 Tarver/Jones boxing match to commercial establishments for a licensing fee. To prevent unauthorized users from viewing its program, Garden City scrambled and distorted its satellite signals; commercial establishment

subscribers to Garden City's programming paid a fee [1] and then were given either a decoder to view the event or (if they had a satellite dish) the satellite coordinates necessary to receive the signal. The defendants were not authorized to receive or broadcast the Tarver/Jones match. (Compl. ¶¶ 12-16; 6/20/05 Gagliardi Aff. ¶¶ 3-8.)

On November 8, 2003, Keith Rauscher, an independent auditor hired by plaintiff to investigate establishments that unlawfully exhibited its program, entered Café Melao at 11:15 p.m. He observed one television displaying the end of the first round and the beginning of the second round of the Tarver/Jones fight. Café Melao did not have a cover charge, and there were 40 people inside the restaurant. Rauscher estimated that Café Melao's capacity was 200 people. He left at 11:20 p.m. (11/17/03 Rauscher Aff.; 6/20/05 Gagliardi Aff. ¶7.)

DISCUSSION

Upon the entry of a default judgment, the Court accepts as true all of the facts alleged in the complaint, except those relating to the amount of damages. *See Au Bon Pain Corp. v. Artect Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). An inquest is then conducted to determine the amount of damages.

The Court may not award damages under both 47 U.S.C. § 605 and 47 U.S.C. § 553. *International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129 (2d Cir. 1996), *cert. denied*, *Noel v. International Cablevision, Inc.*, 519 U.S. 929, 117 S.Ct. 298 (1996). If a defendant has violated both sections, then the Court should award damages only under Section 605, which has more severe penalties than Section 553. *Sykes*, 73 F.3d at 129. Thus, I will discuss only Section 605 and the plaintiff's remedies under it.

47 U.S.C. § 605(a) states, in part:

No person not being authorized by the sender shall intercept any radio communication and divulge or

---

[1] Plaintiff says that the "residential price" to purchase the pay-per-view broadcast was $54.95. It is silent on the "commercial establishment" price, but Magistrate Judge Azrack recently wrote that its "commercial establishment" fee was, as of September 18, 2004, $20.00 per patron. *Garden City Boxing Club, Inc. v. Bello*, 2005 WL 2496062, at *5 (E.D.N.Y. Sept. 20, 2005) (Azrack, M.J.).

> publish the existence, contents, substance . . . of
> such intercepted communication to any person.  No
> person not being entitled thereto shall receive . . .
> any . . . communication by radio and use such
> communication . . . for his own benefit or for the
> benefit of another not entitled thereto. . . .

47 U.S.C. § 605(e)(3)(C)(i)(II) provides that an aggrieved party may recover an award of statutory damages for each violation of subsection (a), in an amount between $1,000 and $10,000 as the Court considers just.  The statute further provides that the Court "in its discretion may increase the award of damages . . . by an amount of not more than $100,000" where the Court finds that the defendant's violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  See 47 U.S.C. § 605(e)(3)(C)(ii).

In three other inquests involving a similar fact pattern, I followed Magistrate Judge Pitman's lead and awarded a set dollar amount of $300.00 per patron.  *See Entertainment by J&J v. Rosario*, 01 Civ. 5485 (JSM)(DFE) (May 20, 2003); *Top Rank, Inc. v. Caceres,* 01 Civ. 8426 (HB)(DFE) (Mar. 19, 2002); *KingVision Pay-Per-View, Ltd. v. Acogedor Cibao Restaurant*, 99 Civ. 10095 (RMB)(DFE) (S.D.N.Y. November 28, 2001).  In those three inquests, Judge Martin, Judge Baer and Judge Berman adopted my Reports in their entirety.  I note that Judge Dolinger recently used this approach as well.  *See Garden City Boxing Club, Inc. v. Alicea*, 04 Civ. 2084 (RMB)(DFE) (June 6, 2005).

In *Cablevision Systems New York City Corporation v. Jose Cateras d/b/a Acogedor Cibao Restaurant*, 97 Civ. 7199 (LAK)(HBP), at ¶ 28 (S.D.N.Y. May 1, 1998), Magistrate Judge Pitman recommended that under 47 U.S.C. § 605(e)(3)(C)(i)(I) and (II), Cablevision Systems should be awarded $300.00 per patron for the defendant's illegal interception and public display of a 1996 boxing match.  Judge Pitman wrote at ¶ 28:

> I recommend this figure because although defendant's
> violation was serious and intentional, it appears that
> defendant's establishment is small and defendant's
> financial gain was minimal. [Footnote 2]  Although I
> agree with plaintiff that defendant's conduct should
> not be tolerated and that considerations of general
> deterrence are relevant to the determination of the
> amount of the penalty, I do not believe that
> defendant's violation is so serious as to warrant the
> imposition of a penalty that would necessarily drive
> defendant out of business.  See New Contenders, Inc. v.

-3-

>     Diaz Seafood Corp., 96 Civ. 4701 (AGS)(HP), 1997 WL
>     538827 at *2 (S.D.N.Y. Sept. 2, 1997). . .

At Footnote 2, Judge Pitman wrote:

> I assume that one of the reasons defendant illegally
> intercepted the Return of the Legends Event was to
> profit from increased sales of food and drink.
> However, even if I make the generous assumption that
> each of the twenty-two patrons ordered $100 worth of
> food and drink, the damages figure I recommend will
> still result in disgorgement of defendant's profits
> several times over.

Judge Kaplan adopted Judge Pitman's Report and Recommendation on May 19, 1998.

In the case at bar, plaintiff's investigator reported that there were 40 people in defendants' establishment. At $300.00 per patron this would lead to $12,000.00, but instead I award plaintiff the statutory maximum of $10,000.00.

Plaintiff also seeks enhanced damages of $50,000 because "Defendant has pirated two (2) additional events for a total of three piracies that have been documented by the victims." The word "additional" was poorly chosen. Plaintiff is referring to two earlier piracies -- the February 22, 2003 Tyson/Etienne match and the March 1, 2003 Jones/Ruiz match. Plaintiff says that the March 1, 2003 match was the subject of another of its lawsuits in our Court (*Kingvision Pay-Per-View, Ltd. v. Pagan*, 03 Civ. 3838(LAP).) (*See* Plaintiff's Memo. p. 2.)

The defendants in the *Pagan* case were Sandra Noemi Pagan and CJS 17 Corp., a/k/a Café Melao Bar Restaurant. I assume that is the same location, but I see no evidence that the defendants in the case at bar (Mr. Salcedo and Trio Bar Corp.) were involved with Café Melao as far back as March or April 2003. I decline to award enhanced damages.

Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), plaintiff is entitled to full costs, including reasonable attorney's fees. I have reviewed the June 2005 affidavit of plaintiff's attorney, Julie Cohen Lonstein, Esq., which details the time she spent on this case (21.75 hours), her hourly rate ($200.00), the time her paralegal spent on this case (7.50 hours) and the paralegal's hourly rate ($75.00) for a grand total of $4,912.50. In reviewing Ms. Lonstein's summary of the attorney and paralegal time spent, I find some of the entries to be either inflated or

erroneous. For example, Ms. Lonstein says that: (1) on August 4, 2004 she spent 30 minutes reviewing a standard one-paragraph form affidavit of service; (2) on July 6, 2004, she spent 30 minutes reviewing the Scheduling Order -- there was no Scheduling Order entered until August 9, 2004, when Judge Berman memo endorsed Ms. Lonstein's August 3, 2004 letter seeking a 45-day adjournment of the initial pre-trial conference; (3) on January 20, 2005, she spent 30 minutes reviewing a court order -- there were no court orders entered anytime between December 7, 2004 and April 12, 2005. I also note that some of the work was boilerplate, and that during the time in question, Ms. Lonstein was charging this same client only $150.00 per hour in a similar case. *See Garden City Boxing Club, Inc. v. Bello*, 2005 WL 2496062, at *5 (E.D.N.Y. Sept. 20, 2005) (Azrack, M.J.). Accordingly, I have decided to reduce plaintiff's attorney's fees by $2,500.00. I hereby award plaintiff attorney's fees in the amount of $2,412.50.

Plaintiff also seeks costs and disbursements consisting of a $150.00 filing fee, a $140.00 service of process fee, and a $350.00 investigation fee. I will award plaintiff the first two amounts, but only $100.00 for the investigation fee. I agree with Magistrate Judge Azrack that plaintiff should find a cheaper investigative service -- one that pays its investigators less than $350.00 for five minutes of work. *See Bello*, 2005 WL 2496062, at *6, n.2.

Pursuant to 47 U.S.C. § 605(e)(3)(B)(i), I find that plaintiff is entitled to a permanent injunction enjoining and restraining the defendants from importing, receiving, possessing, or using a pirate access device, and I direct the defendants to surrender all such pirate access devices in their possession to plaintiff.

## CONCLUSION

For the reasons set forth above, I award plaintiff: (1) statutory damages against the two defendants, jointly and/or severally, in the amount of $10,000.00; and (2) costs and attorney's fees against the two defendants, jointly and/or severally, in the amount of $2,802.50. I hereby permanently enjoin and restrain the defendants from importing, receiving, possessing, or using a pirate access device, and I direct the defendants to surrender all such pirate access devices in their possession to plaintiff.

_____
DOUGLAS F. EATON
United States Magistrate Judge
500 Pearl Street, Room 1360
New York, New York 10007
Telephone: (212) 805-6175
Fax: (212) 805-6181

Dated:    New York, New York
          November 3, 2005

Copies of this Memorandum and Order were sent on this date by mail to:

Julie Cohen Lonstein, Esq.
Lonstein Law Office, P.C.
1 Terrace Hill, P.O. Box 351
Lonstein Professional Building
Ellenville, NY 12428

Mr. Marco Salcedo and
Trio Bar Corp.,
doing business as Café Melao
1735-37 East 172nd Street
Bronx, NY 10472